My Honors, Brian Michaels, on behalf of the Plaintiffs' Appeal Office, your notice that I'd like to reserve three minutes for rebuttal. As you are aware, the court asked us to be prepared to discuss the exchange procedure. I can see the court ordered to repeat five sites to that case. I think it really stills down for discussion the issues that are at play here. One is whether or not this is a mandatory statute. The 291 section of the statute says shall, but then the legislature has carved out an exception in 293, which gives the sheriff some discretion. We would present that there's a very narrow and limited discretion, but with the defense that it would appear that Judge Simon, as well, wants us to conclude that the exception essentially eats up the rule. We would ask the court to find otherwise. The legislature is comparable to the Erdelyi case in the Ninth Circuit, which analyzed the California Concealed Handgun Permanent Statute. That statute, the court was very noteworthy, gave us this overt language to apply discretion to the sheriff. Not only does it say may instead of shall, but it also says the sheriff has certain other discretionary conditions and abilities to allow or deny a permit, and that's openly in the language. The exception that's been carved out in 293 of the statute really gives the sheriff a very narrow view of when he or she may deny an application. That narrow view is peppered with language such as patterned and unlawful activity, which in 18 and 19 in our opening brief would give definitions for that. We would present that unlawful violent behavior is necessarily criminal, unlawful violent behavior, which necessarily has a standard of beyond a reasonable doubt. Some states have what are called shall-issue statutes for a permanent right. This one seems to be kind of a hybrid. In California, I'd say it's totally discretionary. I'm an adventurous scholar of California law. You may disagree, but it seems to an outsider that it's totally discretionary, and this one looks like shall-issue, except there are no carve-outs. Is that right? Well, yeah, I think that we would call it an exception rather than a hybrid because we believe that the exception cannot follow up the rule. The exception is subservient to the rule, not an equal force with the rule, and you can tell that by the language of the exception. When it's peppered with things like pattern and criminal behavior, which we would call unlawful equals criminal, and criminal means beyond a reasonable doubt, and we mention this because you can see how this minor scope of discretion can be abused by a sheriff as it was in this case. The sheriff used two misdemeanors that not only were expressed, but he was found not guilty. Now, how can that be just a component of a pattern of unlawful, violent behavior if he was quick? The sheriff said, well, that's part of my discretion, even though it's contrary to the language in the statute, requiring a pattern of unlawful behavior. And then we defined pattern as a series of events, not a single isolated event, in this case separated by 17 years. And the one 17 years later wasn't a conviction either. It didn't even result in an arrest. So you have arguments about why the decision was wrong, but you proceeded with those arguments and were able to get the license back, right? So why wasn't all the process that you were due given? Well, I think, yes, the statute did have an unlawful process, but that doesn't take away the fact that the sheriff abused discretion and took away for over a year and a half these persons so that they could do process right to obtain this license. I'm sorry. I'm sorry. I'm sorry. Okay. If the sheriff had done it in a, I guess that's for the jury to determine, but, you know, if the sheriff had done it in a way that was consistent with the statute, even reasonably so, there may be an argument to the jury on a summary judgment that he wouldn't be liable. But I don't know that. In much the same way as a shack situation where, you know, just because ultimately somebody was acquitted doesn't mean it doesn't have to be falsified. The probable cause to arrest somebody doesn't disappear just because later he was acquitted. You have to determine whether it was probable cause to arrest in the first place. That may be a bit esoteric in its analysis, but I don't know of any case where the appeal process necessarily exonerates or inhumanizes somebody who violated somebody else's constitution. Correct. The sheriff abused his discretion. That's not the standard under Shakespeare. Well, under Shakespeare's order he was mandated to do something. No, the issue was whether it was constitutionally arbitrary for him to exercise his discretion the way he did. And I don't see the evidence that there was an arbitrary decision. It's arbitrary and also if you're getting further to the purpose of the statute and you're going to be interested in the statute. I think for it to be a substantive due process violation, you need it to be totally arbitrary, so much so that it's unconstitutional and it's craziness essentially. And this, you may disagree, but it's not crazy to think that someone who has a violent history shouldn't have a gun determined, is it? Well, he doesn't have a violent history. Well, let's just point. He doesn't have a violent history. The language would preclude the error from using something while he was acquitted, which were two driving crimes, by the way, while he was acquitted. So how can we say he has a violent history if he was acquitted? And the other thing that the sheriff uses is something for which he was never even arrested. And if you look at, well, that's separation. Is there any reason that you can't watch a videotape of an incident, even if the person wasn't arrested, and decide that it's relevant? Well, if you're looking at the language of the statute, it says unlawful violent behavior. Unlawful means criminal. Criminal means to be under reasonable doubt. If that's up to the sheriff, does the statute really need the sheriff that discretion to determine whether he's guilty under reasonable doubt and is not even arrested? I think that goes way over the top. Well, if you look at ER-76 and see what he says under ER-76, it's so he doesn't even give reasons. He just says endanger the self-office community under OR-166-293. So it would appear that this was so arbitrary that we could conclude that this was personal. So the defendants argue that even if you're right, that there may be a constitutional violation here, they have qualified immunity because the law wasn't clearly established. And I didn't see a response to that argument at all in your briefs. Are you conceding that the law was not clearly established in this area? No, we're not. That's kind of the issue with the concern. I'm running out of time. ROI. We've got some fit in that one. The ROI is a well-established case. It's been around for a long time. And it involves California statute, which when it uses language that gives the sheriff discretion, this is a shall state. This is a shall issue. The presumption is that the gun license can't be given decamply. That's what the state of Oregon finds its interest in this statute. The people who qualify under 1921, given their handgun license permit, and they clubbed out this minor exception, that law has been in existence for a long time. The actual reason of that law, and so those defections are harmonized, is that the license shall be given under then extreme circumstances. Watching a video of somebody who did not even get arrested, is that the extreme circumstances contemplated by the exception? You're meeting in the rebuttal time. Would you like to say for the remainder of your time? Thirty-six seconds, ma'am. Okay. Thank you. Good morning, police department. I'm Daryl Warren on behalf of the Thelma County Sheriff's Anderson Law. I understood the court's guidance with the order that was issued for the parties to address why there's no evidence of egregious official misconduct in this case. I expected then to stand up and argue, well, Mr. Warren shut off our ability to conduct discovery, because we did file a motion early on. However, we did provide them the records, provided them with a complete copy of the permit file that the sheriff used, and that's in Document Number 31. I also sent a letter to them with the file. I can supplement the record. I don't think they'll deny they got that. But there's no allegations in the complaint of any egregious conduct. They say malicious at one point, and that has to do with their seeking punitive damages. Well, I think our, as I recall, our focus was whether the act of denying the permit was the egregious conduct under Shafts that, as I posed to counsel for the plaintiff, the sheriff, was the outrageous behavior on the part of the sheriff. Now, he said he did it without any evidence, cited some driving infractions. I understood that there was actually an assault, a reckless endangerment charge, and that there was also a 2011 altercation with a homeless person. Yes, Your Honor, that's correct. That's the state of the record on that. Well, that is correct. Those are the grounds that the sheriff put in his declaration as to what he used. And then he also cited a BLM incident, an individual I've related to him, where their client had pulled a gun on somebody at a campsite. And so all those things he took and applied that to the exception that he felt allowed his discretion to deny the permit. Remember, we're talking about remuneration. Early on, I think it was 11, and then a denial. And the court upheld that denial and said apply again after the period runs. And then the sheriff long denied it. And then it was only 67 days until the circuit court reinstated it and said, no, you don't have enough here. We don't believe, even though there's no definition in the statute as to what this unlawful behavior is, it certainly doesn't say criminal convictions here. But he did have a criminal conviction, and then that was expunged. He got that expunged. And in the record, there's an e-mail communication between their criminal defense attorney and the county council. And so the county did have that. The sheriff still felt he had that report. He had that incident. He had the most recent incident where their client, Mr. Albertson, claimed he used his car to move a homeless person out of the way and then had to push him out of the way. And all that was on videotape. And so the sheriff felt that he had sufficient grounds to believe that that was a pattern upon which he could deny the permit. So there is no abusing behavior. The reasons given by the sheriff are simply not without foundation. They have a good basis for that decision. The judge, when Judge Paffey heard the motion, they filed a motion under 5016 and said, we need more discovery. And in that motion, they said, Plaintiff firmly believes that in resolving the substitute due process issue, the court should not consider the sheriff's alleged reasons for denying the CHL. So they said, you don't even need to look at that. And they have no notion of egregious behavior throughout. In the declaration from Mr. Albertson, he says, the sheriff told me exactly why he was denying it. That was an egregious behavior. So we don't believe, on this record, no reasonable juror could find that the sheriff's decision to deny was irrational. There's nothing to show as irrational. They disagree with the grounds. They want to put a different definition into the statute. But it certainly wasn't an abuse of power lacking any rational justification. The checks required, as Judge Fischer noted in that case, the courts never required a heightened scrutiny where there's not a fundamental right involved. And concealed handgun permit license is not a fundamental right. You made an argument like this in, I think, footnote three of your brief, but it was not a focus of your brief. Do you think your footnote three was enough to preserve this argument? I would need to look at footnote three. But I think I've seen the brief. I think we've preserved it. If there's nothing, no further questions from the court, those of you are excused now. Thank you, Counselor. We'll give you a full minute because we took you under there. Thank you. To begin with, let's straighten out the record. It was a reckless driving charge for which he was acquitted because it was a misdemeanor in Oregon. Misdemeanors are unanimous jury verdicts. Felonies are ten and above. So it was a unanimous jury verdict that acquitted him of that charge. What he expunged was the arrest record. So he was never convicted of any assault or reckless endangering or anything of that nature. He was never convicted. And he was never charged with a reckless endangering or an assault or anything of that nature. The 2011 issues that Counsel raised, if you look at page 42, which has your BLM essays. Yes, because that is troubling. Well, if you look at the declaration of the sheriff's agent, Mr. Deputy Long, at ER 42, this is an anonymous report. The BLM officer himself is not even named. There was no written report that they were able to look at. We have no idea what substance he faces this, even though a rumor would be based on if it was as serious as the sheriff wants us to believe. And why wasn't the report made? Why wasn't the arrest made? Why wasn't the named officer who sent the sentence to the officer named? This is just a blur on a screen somewhere that was never verified either by name or incident. So it's hard to really put much force into that incident. Because a rule in all suffrage avoidance doesn't even exist. It's important to remember that, despite Counsel's use of the word outrageous, Chance really says that it has to be arbitrary and unrelated to the legitimate government interest. Thank you, Counsel. I appreciate your time. Thank you very much. Thank you to both sides for your hopeful arguments.
judges: Fisher, Friedland, Mahan